**In re David McMEEKIN and Joan Shoreman, Alleged Debtors.**

Nos. 81–00625–G, 81–00626–G.

United States Bankruptcy Court, D. Massachusetts.

Jan. 27, 1982.

Paul Greene, Great Barrington, Mass., for plaintiff.

Sidney Q. Curtiss, Great Barrington, Mass., Michael West, Kamberg, Berman, Hendel, Gold & West, P. C., Springfield, Mass., for defendant.

## MEMORANDUM AND ORDER ON MOTIONS TO DISMISS INVOLUNTARY PETITIONS

PAUL W. GLENNON, Bankruptcy Judge.

The above-named alleged debtors are involved in separate bankruptcy proceedings, each of which was commenced by the filing, pursuant to § 303 of the Bankruptcy Code[1], of an involuntary petition under Chapter 7 of the Code.[2] In each instance, the same three creditors brought the petition and, in each case, each creditor's claim against the separate debtors is based upon the identical transaction or judgment. Joan Shoreman has moved to dismiss her bankruptcy proceeding on the grounds that two joint payees of a promissory note do not constitute separate entities for purposes of § 303(b)(1) of the Code. Therefore, it is argued that in reality only "two" entities have petitioned for bankruptcy, and because the petitioners have failed to allege that there are less than 12 creditors, as required by § 303(b)(2), the petitioners have failed to properly state a claim upon which relief may be granted under § 303(b). Since, David McMeekin has joined in the motion to dismiss for substantially the same reasons, and since arguments were heard together in each case, this opinion consolidates the issues in each proceeding for purposes of decision. Finally, this decision focuses only on the question of whether the petitions are sufficient on their face as to warrant further trial on the merits of petitioners' claims.

### FACTS

In each petition before the Court, Paul Gershman, Robert R. Tolvo and Ruth H. Tolvo are listed as the petitioning creditors. On each petition, as well, it is stated:

Debtor owes Paul Gershman $32,105.45 on a judgment dated December 9, 1980; Debtor owes Robert R. Tolvo and Ruth H.

Tolvo $12,084.60 representing principal and interest due and payable on a note past due.

The issue presented to the Court on each alleged debtor's motion to dismiss is whether Robert and Ruth Tolvo may be considered separate "entities" for purposes of § 303(b)(1). As part of the record in each case is a copy of the Note upon which the Tolvo's rely for their claim that each debtor is liable to them. The Note provides, in pertinent part:

FOR VALUE RECEIVED, WE, DAVID McMEEKIN and JOAN SHOREMAN, both of Great Barrington, Massachusetts, jointly and severally, promise to pay to ROBERT R. TOLVO and RUTH H. TOLVO, as joint holders ... the sum of Fifteen Thousand and 00/100 ($15,000.00) Dollars, with interest thereon at the rate of seven (7%) percent per annum payable as follows: principal and interest payable in installments of Six hundred seventy one and 59/100 ($671.59) Dollars on the 2nd day of each and every month beginning on the 2nd day of December, 1977 ... together with a late charge of three (3%) percent of any interest and principal payment which shall be fifteen (15) days past due.

That agreement, dated November 2, 1977, provides the basis for the Tolvo's claim that they are each an entity holding a non-contingent claim against each alleged debtor.

Joan Shoreman has relied solely on the argument that the Tolvos may not be called separate entities for purposes of qualification to file an involuntary petition. David McMeekin, in addition to Ms. Shoreman's argument says that the Tolvos' claims are contingent because they have not been reduced to judgment, and that such contingency is further grounds for disqualification of the Tolvos' claims and for dismissal of their petition.

---

1. 11 U.S.C. § 303, as amended by Pub.L. 95–598 (1978).

2. 11 U.S.C. §§ 701–766, as amended by the Bankruptcy Reform Act of 1978 (Pub.L. 95–

598). All future references to sections of the Bankruptcy Code are to Title 11 of the U.S. Code as amended by the Reform Act of 1978.

## DISCUSSION

Section 303(b)(1) requires, in pertinent part, that the petition be made by at least 3 entities, each of which holds a non-contingent claim.[3] In the first instance, the fact that a creditor's claim is disputed does not disqualify a creditor from joining an involuntary bankruptcy petition. *Matter of Covey*, 650 F.2d 877, 7 B.C.D. 1069, 4 C.B.C.2d 719 (7th Cir. 1981); *In re B. D. International Discount Corp.*, 13 B.R. 635 (Bkrtcy.S.D.N.Y.1981); *In re All Media Properties, Inc.*, 5 B.R. 126, 6 B.C.D. 586, 2 C.B.C.2d 449 (Bkrtcy.S.D.Tex.1980). A contingent claim is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor. *In re All Media Properties, Inc.*, supra at 133; see also, *In re Duty Free Shops Corp.*, 6 B.R. 38 (Bkrtcy.S.D.Fla.1980). In the instant case, the alleged debtor (McMeekin) has argued only that the claim is disputed, but has not shown, nor does the record in any way indicate, that the claims of the Tolvos are anything other than non-contingent ones. I therefore dismiss that argument, and turn instead to the issue of whether Robert and Ruth Tolvo are each entitled to "entity" status for purposes of qualifying as a petitioning creditor under § 303(b)(1).

According to the two alleged debtors, Mr. and Mrs. Tolvo, as joint payees on a promissory note, do not constitute separate entities as envisioned by the Bankruptcy Code, but rather that, as a husband and wife who are joint payees of a promissory note, they must be viewed as a single entity. This is so, argue the alleged debtors, because an entity "appears to be a person or group of persons that hold a single claim against a debtor". As such, they argue, a husband and wife, as joint payees, should not be permitted to split-up or otherwise divide their claim for the purpose of creating suf-

ficient petitioners for an involuntary petition. See *McCune v. First National Trust and Savings Bank*, 109 F.2d 887 (9th Cir. 1940), and *In re Halsey Electric Generator Co.*, 163 F. 118 (D.N.J.1908). They further argue that under the rule of *Peterson v. Peterson*, 400 F.2d 336 (8th Cir. 1968), each alleged creditor must have an independent claim against the debtor to be counted as a petitioning creditor, and that, under § 3-116 of the Massachusetts Uniform Commercial Code (M.G.L., c. 106 § 3-116), a note made out to two payees in the conjunctive can only be enforced by both payees acting as one. Therefore, they argue that the Massachusetts law has created a type of "entity" which would preclude Robert and Ruth Tolvo from being separate entities under the Bankruptcy Code.

In the first instance, after review of the cases cited by the alleged debtors, I can find no case under the old Bankruptcy Act which dealt squarely with the question before the court today. The cases decided under the Act and cited by the alleged debtors are inapposite and not controlling to this question.

Secondly, the argument that the Tolvos do qualify as separate entities under the Bankruptcy Code ignores the plain meaning of the term as defined by § 101(14) and (30). Entity is defined as including *"person,* estate, trust, or governmental unit." 11 U.S.C. § 101(14). A "person" is defined as including *"individual,* partnership, and corporation, but does not include governmental unit." 11 U.S.C. § 101(30). The Tolvos certainly qualify as distinct individuals, and therefore, as separate persons, and therefore, as separate entities, as defined by the Bankruptcy Code. Moreover, no reason has been argued or appears which would lead the court to believe that any different definition for the term "entity" should be applied in constru-

---

**3.** 11 U.S.C. § 303(b)(1) provides:

An involuntary case is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such

person that is not contingent as to liability or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

ing section 303(b)(1). Therefore, joint payees on a promissory note qualify as separate entities for purposes of filing an involuntary petition under § 303(b)(1) of the Bankruptcy Code.

However, that conclusion does not finally dispose of the matter before me, for § 303(b)(1) lists four criteria for qualification as a petitioning creditor. First, of course, is that the petitioner must be an entity. Second, however, each entity must be the "holder of a claim" against the alleged debtor. Third, said claim cannot be contingent as to liability. And fourth, the total of all three entities' claims cannot be less than $5000 greater than the value of all liens on the debtor's property which secure those claims. The first and third criteria have already been decided, whereas, the fourth criterion has not been put in issue. The second criterion, however, seems the most applicable to the question before me, and would appear to be the criterion which the alleged debtors have challenged in substance, but in the wrong form. The question which should have been presented is whether joint payees of a promissory note each are the holder of a claim against the alleged debtor?

A "claim" is defined under the Bankruptcy Code as meaning a "right to payment", of any nature, whether or not that right be reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, or disputed. 11 U.S.C. § 101(4). Thus, the focus of the inquiry is upon whether Robert and Ruth Tolvo each have a separate right to payment.

■ Under the old Act, a creditor, in order to establish a claim, had to "prove" a debt under § 57 of the Act. Those debts which were "provable" were set out in § 63 of the Act. The question of whether or not a debt was provable in bankruptcy, and therefore qualified as a claim, has always been held to be essentially a federal question. *Heiser v. Woodruff*, 327 U.S. 726, 90 L.Ed. 970, 66 S.Ct. 853 (1946); *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946). However, the federal court, in determining the validity of the obligation on a claim, could normally make reference to the law of the state applicable to the debt in question. *Vanston Bondholders Protective Committee v. Green*, supra. The Bankruptcy Code recognizes that principle by providing that a claim shall be allowed except to the extent that "such claim is unenforceable against the debtor . . . under any agreement or *applicable law.*" 11 U.S.C. § 502(b)(1). Thus, for purposes of determining whether an entity is the holder of a claim and qualified as such to join in an involuntary petition under § 303(b)(1), the bankruptcy court may look to the applicable state law.

■ In both Massachusetts and Florida, whichever state's law may be applicable, the Uniform Commercial Code ("U.C.C.") has been adopted. Both states have the identical language of § 3–116 of the U.C.C., which provides:

> An instrument payable to the order of two or more persons
>
> *     *     *     *     *     *
>
> (b) if not in the alternative is payable to all of them, and may be negotiated, discharged or enforced only by all of them.

While the alleged debtors argued that this provision creates a new legal "entity", I find that the language therein is not dispositive on the "entity" question, but rather that it is most applicable to the question of whether the joint payees on the instrument each have "a right to payment." While an "instrument" is defined under the U.C.C. as a "negotiable instrument" (U.C.C. § 3–102), and the note in question does not qualify as a negotiable instrument because it is not payable "to order" or "to bearer" (U.C.C. § 3–104), U.C.C. § 3–805 makes Article 3 of the U.C.C. applicable to non-negotiable instruments insofar as their form permits. Thus, a promissory note which is not payable to order or bearer is non-negotiable in the sense that there can be no holder in due course of that note, but the Article 3 rules regarding negotiable instruments are otherwise applicable. Therefore, I conclude that

U.C.C. § 3–116 is dispositive of the rights of the joint payees in this case.

The promissory note in question is made payable "to Robert Tolvo *and* Ruth Tolvo" and, under the rule of U.C.C. § 3–116(b), is enforceable only by both of them. What, then, is the nature of their rights under the note? Under Massachusetts law, the right to payment may only be enforced by both of them. *Marlboro Supply, Inc. v. Webb Supply Co.*, 350 Mass. 43, 213 N.E.2d 248 (1965). Additionally, under the same statute, but applying Wyoming law, the Tenth Circuit has ruled that promissory notes made payable to the order of a husband and wife which contain no language creating a right of survivorship or evidencing an intention to create a right of survivorship are held by the payees as tenants in common, and therefore, the husband's one-half interest in the notes does not automatically pass upon his death to his wife as surviving payee and may be discharged where the husband's will specifically forgives any indebtedness due him by the makers of the notes, the wife thereafter retaining only her one-half interest in the notes. *Fehling v. Cantonwine*, 522 F.2d 604 (10th Cir. 1975). This latter decision, on its face, would seem to indicate that joint payees have separate rights under the note, which either of them may enforce. However, a closer look at *Fehling v. Cantonwine* reveals that the holding was to the effect that one joint-payee may not discharge the rights of another without the co-payees's assent. Moreover, in upholding the wife's right to enforce her interest in the note, the Circuit Court was merely recognizing the validity of her one-half interest. But, a one-half interest in what? A promise to pay! A note, such as the note here, which purports to be a promise to repay a fixed sum to two named payees, and which refers to the payees in the conjunctive, is nevertheless a single promise to pay. It creates a single right to payment, which may be shared jointly by the payees, and which may be enforced only by both payees. If one of the payees discharges the obligation to himself, the other payee loses no rights, but is free from the requirement that she may enforce

her rights only with the cooperation of her co-payee. Finally, a contrast to the case before the Court is that of *Kuper v. Schmidt*, 161 Tex. 189, 338 S.W.2d 948 (1960), wherein the interest of one of three payees under a note was stated as a sum certain, and therefore the indorsee of that payee was entitled to maintain an action for his interest without the other two payees because his interest was found to be severable. See also *Hodson v. Scoggins*, 102 Ga.App. 44, 115 S.E.2d 715 (Ga.Ct.App. 1960). Such is not the case here, and therefore, I conclude that Robert and Ruth Tolvo together have one right to payment which is jointly enforceable. That conclusion is buttressed by the fact that the filing of a proof of claim by either payee, and the allowance of that claim, would preclude the other payee from asserting the same claim. There being only one claim, as such, both entities cannot be the "holder" of the same claim, nor is the claim divisible, for the note does not contain a promise to pay $7500 to Robert Tolvo and a like promise to pay Ruth Tolvo, but rather, states one promise to pay $15,000 to the both of them. As such, there arises but one "right to payment", and therefore, one claim. As a result, the Court must conclude that, in the instant case, though there be the requisite number of qualified entities, they are not all the "holders of claims", and further hearings on the involuntary petition would, therefore, be unwarranted.

It is therefore ORDERED, that the involuntary petitions filed against David McMeekin and Joan Shoreman be and hereby are DISMISSED.